796 P.2d 1138

**GIANT INDUSTRIES ARIZONA, INC., Appellant,**

v.

**TAXATION AND REVENUE DEPARTMENT, Appellee.**

**No. 11787.**

Court of Appeals of New Mexico.

June 26, 1990.

Joseph E. Earnest, Catherine E. Pope, Montgomery & Andrews, P.A., Santa Fe, for appellant.

Hal Stratton, Atty. Gen., Carolyn A. Wolf, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

BIVINS, Chief Judge.

Giant Industries Arizona, Inc. (taxpayer) appeals a decision and order of the New Mexico Taxation and Revenue Department (Department) denying taxpayer's protest of gasoline excise tax assessments and finding taxpayer liable for those assessments. We reverse and remand.

NMSA 1978, Sections 7–13–4.1 to –4.3 (Repl. Pamp.1988) provide a deduction from the gasoline excise tax, NMSA 1978, § 7–13–3 (Supp.1989), for "gasoline received in New Mexico containing a minimum of ten percent by volume of denatured ethanol alcohol manufactured exclusively in New Mexico." § 7–13–4.1. In order to qualify for the deduction, the gas must be exclusively manufactured in New

Mexico, and at least 50% of the agricultural feedstocks by volume used in fermentation must be produced in New Mexico. § 7–13–4.2(A). Thus, if the ethanol is manufactured outside of New Mexico, or if more than half of the agricultural feedstocks used in fermentation are produced outside of New Mexico, the deduction is not available.

Taxpayer has received ethanol-blended fuel manufactured in New Mexico and in other states. Since 1988, taxpayer has withheld payment of gasoline excise taxes on all ethanol-blended gas, including ethanol gas not manufactured exclusively in New Mexico. Department assessed taxpayer for nonpayment of taxes on ethanol-blended gasoline that was not manufactured exclusively in New Mexico for the period of August 1988 to December 1988. The decision and order upheld these assessments.

In appealing the assessments, taxpayer contends (1) the statutory limitation on the tax deduction for ethanol-blended fuel imposes an impermissible burden on interstate commerce; (2) the limitation on the deduction also violates the equal protection clause; and (3) the unconstitutional limitation on the tax deduction should be severed and the deduction continued without reference to where the ethanol is manufactured. Because we hold the statutory limitation on the tax deduction unconstitutional as an impermissible burden on interstate commerce, we do not reach taxpayer's second issue attacking the statute on equal protection grounds. We also hold the unconstitutional portion of the statute is not severable; therefore, the deduction is invalid. Although the Department argued to the contrary, the hearing officer concluded that he lacked authority to determine the constitutionality of the statutory limitation on the tax deduction for ethanol-blended fuel.

I. *Constitutionality of the Ethanol–Blended Fuel Deduction*

Taxpayer claims that limiting the deduction to ethanol-blended fuel manufactured exclusively in New Mexico constitutes an impermissible burden on interstate

commerce in violation of article 1, section 8 of the United States Constitution. The Department concedes the unconstitutionality of the deduction.

In *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988), the Supreme Court reviewed an Ohio statutory provision similar to our own. The Ohio statute provided a tax credit for ethanol producers from Ohio or from states granting reciprocal tax credits, exemptions, or refunds for Ohio-produced ethanol fuel. The Court held that the Ohio provision "explicitly deprives certain products of generally available beneficial tax treatment because they are made in certain other States," 486 U.S. at 274, 108 S.Ct. at 1807, and the provision was therefore violative of the cardinal requirement of nondiscrimination on its face. The Court determined that the statute exacted a higher tax upon a product manufactured in other states than the same product made by Ohio manufacturers without justification for the disparity. Furthermore, the Court found that the alleged justifications for the discrimination, the protection of health and increase of commerce in ethanol, were not sufficiently advanced by the provision to justify the discrimination. "In sum, appellees' health and commerce justifications amount to no more than implausible speculation, which does not suffice to validate this plain discrimination against products of out-of-state manufacture." *Id.* at 280, 108 S.Ct. at 1811.

Section 7–13–4.1 similarly discriminates between the tax treatment of ethanol-blended fuel manufactured in New Mexico and ethanol-blended fuel manufactured elsewhere. We therefore hold that, under *New Energy Co.,* this discrimination violates the commerce clause. *See also Archer Daniels Midland Co. v. State ex rel. Allen,* 315 N.W.2d 597 (Minn.1982). We now address whether the unconstitutional portions of the deduction sections are severable from the remainder of the ethanol deduction sections.

II. *Severability*

 It is a fundamental principle that a part of a statute may be invalid and the remainder valid, where the invalid part can be separated from other portions, without impairing the force and effect of the remaining portions. *Bradbury & Stamm Constr. Co. v. Bureau of Revenue,* 70 N.M. 226, 372 P.2d 808 (1962). Before a partially invalid statute can continue in force, it must satisfy three tests: (1) the invalid part must be separable from the other portions without impairing the force and effect of the remaining parts; (2) the legislative purpose expressed in the valid portion can be given force and effect without the invalid part; and (3) when considering the entire act, it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid. *Id.; State v. Spearman,* 84 N.M. 366, 503 P.2d 649 (Ct. App.1972).

Taxpayer argues that the unconstitutional parts should be severed from the remainder of the deduction, thereby extending the deduction to all ethanol-blended fuel. The Department contends that the limitations in the deduction to the New Mexico ethanol, which render it unconstitutional, cannot be severed from the remainder of the statute, and therefore the entire deduction must be invalidated. The Department concedes that it is possible to delete the words "manufactured exclusively in New Mexico" from NMSA 1978, Section 7–13–2(N) (Repl. Pamp.1988) and Sections 7–13–4.1 and –4.2(A), and to delete the phrase "provided that at least fifty percent of the agricultural feedstocks by volume used in fermentation are produced in New Mexico" from Section 7–13–4.2, and still have grammatically complete sentences. The real question, according to the Department, is whether the third test under *Bradbury & Stamm* can be satisfied. Thus, as we understand the Department's position, it does not challenge the first two criteria under *Bradbury & Stamm,* only the third. Consequently, we must decide whether, on a consideration of the whole act, the legislature would have passed the valid part if it had known that the objectionable part was invalid.

In deciding that question, we are aided by the legislature's findings and declaration of purpose as set forth in Section 7–13–4.3, which provides:

The legislature finds and declares that the production and sale of ethanol blended fuel is of great importance to the state of New Mexico because such motor fuel pollutes the air less than conventional motor fuel, provides a new use and market for new [sic] Mexico agricultural products and reduces dependence on limited oil resources. Accordingly, it is declared to be the public policy of the state of New Mexico to encourage, through tax relief, the production within the state of ethanol blended fuel which contains denatured ethanol alcohol derived from New Mexico agricultural products.

The parties do not seem to question that, by expanding the deduction, two of the purposes would be furthered. Air pollution would be reduced, as well as dependence on limited oil resources. The pivotal question is whether the third purpose, providing a new use and market for New Mexico agricultural products, would be served by expanding the deduction.

The Department focuses on the second sentence of Section 7–13–4.3, noting that the single stated purpose of the legislature was to encourage the New Mexico ethanol industry to help New Mexico agriculture.

■ The fundamental principle of any attempt at statutory interpretation is to further the legislative intent and purposes underlying the statute. *See Security Escrow Corp. v. State Taxation & Revenue Dep't*, 107 N.M. 540, 760 P.2d 1306 (Ct.App. 1988). "All rules of statutory construction are but aids in arriving at the true legislative intent." *Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 226, 668 P.2d 1101, 1103 (1983).

■ Examining first Section 7–13–4.3, we find two sentences. The first sentence makes findings and declares that the production and sale of ethanol-blended fuel is of great importance to the state of New Mexico. That sentence sets forth three reasons why ethanol production and sale is important, i.e., reduction of air pollution,

reduction in dependence on limited oil resources, and providing a new use and market for New Mexico agricultural products. Reading the first sentence alone, it might be argued that those three purposes are of equal importance; however, the second sentence, which sets forth the public policy, refers only to encouragement, through tax relief, of the production within the state of ethanol-blended fuel which contains ethanol alcohol derived from New Mexico agricultural products. Reading the two sentences together, we conclude that economic protectionism was the primary purpose of the deduction.

Reading all of the deduction sections together, Sections 7–13–4.1 to –4.3, lends support to this interpretation. Section 7–13–4.1 clearly addresses only the economic protectionism purpose. Section 7–13–4.2 likewise deals with ethanol-blended fuel produced using New Mexico agricultural products. More important, that section provides a phase-out period for the deduction. It provides, commencing July 1, 1987, for a deduction where at least 50% of the agricultural feedstocks used in fermentation are produced in New Mexico, of eight cents per gallon, with the final deduction to end June 30, 1991 at the reduced amount of two cents per gallon. The phase-out provision strongly suggests economic motives for the deduction. There would seem to be little reason to phase out the deduction if reducing air pollution and decreasing dependence on oil resources were the motives. Reading the three relevant sections together, as well as the findings and declaration of purpose, as we have already done, we do not believe that the legislature would have enacted the deduction had it known that the objectionable part was invalid. *Bradbury & Stamm Constr. Co. v. Bureau of Revenue.*

The result we reach is supported by *Archer Daniels Midland Co.* In that case, the Supreme Court of Minnesota declared unconstitutional a portion of a statute which provided a tax reduction only for gasohol produced and distilled in that state. The court also held the appropriate remedy was to invalidate the entire statute rather than sever the unconstitutional language and extend the tax reduction to all produc-

ers. In doing so, the Supreme Court of Minnesota held that severing the unconstitutional language would have frustrated the legislative intent of benefiting only intrastate concerns. Taxpayer attempts to distinguish *Archer Daniels Midland Co.* on the basis that the court in that case did not have the benefit of a statement of purpose, whereas we do. While that is correct, our interpretation of the legislative purpose as set forth in Section 7–13–4.3 convinces us that the legislature would not have enacted the deduction had it known the objectionable part was unconstitutional.

The two cases relied on by taxpayer in support of severability can be distinguished. In *Eagerton v. Exchange Oil & Gas Corp.*, 440 So.2d 1031 (Ala.1983), the Supreme Court of Alabama determined that federal preemption of a "pass-through" provision of an oil and gas severance tax did not make the remainder of the statute unenforceable. The tax act included a severability clause. The court noted a policy in favor of honoring severability clauses and reasoned that severance would not affect the act's operation because the remaining portions of the act were not so intertwined as to render their application meaningless. Further, the "pass-through" provision was determined to be incidental to the rest of the act in light of the legislative intent to increase the oil and gas severance tax. We have found, however, that economic protectionism is the primary purpose of the New Mexico ethanol deduction. The unconstitutional language is therefore not incidental, and, as we have noted, it is intertwined within each of the ethanol deduction sections.

In the second case cited by taxpayer, *Delta Air Lines, Inc. v. Department of Revenue*, 455 So.2d 317 (Fla.1984), the court severed the invalid corporate tax provision because it was logically separable, and severance would not hamper the legislative intent to provide a transportation fund for the state. We have found, however, that the legislative purpose behind our deduction provisions would be defeated by severance.

Therefore, we hold the unconstitutional portion of the statutes cannot be severed; the entire deduction must fail.

In its reply brief and pleadings filed following its motion to expedite, taxpayer now argues that the issue of severability is moot. Taxpayer bases this position on the Department's concession made in its answer brief that it would abate all of the assessments at issue if the section in question was declared unconstitutional. Because taxpayer would no longer be liable for past assessments and would not suffer any harm due to application of this unconstitutional taxing scheme, it contends that there is no need to decide the question of severability. We disagree.

█ First, the issue of severability should be decided as a corollary to the determination of constitutionality where only part of a statute is challenged. Failure to make a determination of severability might leave a party without a remedy. Second, even if the Department abates past due assessments, it needs to know how to handle future assessments. Without a determination of severability, the Department would not know whether to allow the deduction or disallow it. Thus, we reject taxpayer's claim of mootness.

III. *Conclusion*

█ We conclude that Section 7–13–4.1 is unconstitutional in its attempt to limit deductions to ethanol-blended fuel produced in this state. We also determine that the limiting provisions restricting the deduction to New Mexico-produced products cannot be severed, thereby making the deduction invalid.

The Department, in its answer brief, asked this court to determine whether the Department has the power or authority to declare the statute unconstitutional, contending that without such authority it is placed in the position of having to enforce statutes which it recognizes as unconstitutional. *See generally Sandia Savings & Loan Ass'n v. Kleinheim*, 74 N.M. 95, 391 P.2d 324 (1964) (allegations that law upon which tax assessment was based was unconstitutional raised claim that state tax commission lacked right or power to assess tax; exhaustion of administrative remedies was not prerequisite to filing suit, because commission had no jurisdiction to consider

the complaint); *see also Montez v. J & B Radiator, Inc.*, 108 N.M. 752, 779 P.2d 129 (Ct.App.1989) (worker's failure to raise constitutional attack on statute before Workers' Compensation Division did not preclude appellate review because hearing authority had no authority to decide issue). While taxpayer raised that issue in its docketing statement, it expressly abandoned and withdrew it in its brief-in-chief. The Department did not file a cross-appeal, nor has it sought to sustain the hearing officer's decision by raising this issue. *See* SCRA 1986, 12–201(B), (C). Additionally, it appears that the Department and taxpayer argue for the same result, i.e., that the Department should be able to declare a statute unconstitutional. Where both parties affirmatively desire the same result, no justiciable issue is presented. 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3530, at 317 (2d ed. 1984). Under the circumstances of this case, we are not persuaded this case involves adversary interests, *see id.* at 320, and we decline to address the issue.

Reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.